# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WALLACE R. MCCULLOUGH,<br><br>             Plaintiff,<br><br>    vs.<br><br>BENJAMIN GERARD PEARLMAN,[1]<br>Sarpy County Attorney; SARPY<br>COUNTY, RACHEL SPURGEON,<br>#865 - Sarpy County Deputy Inv;<br>DARIN MORRISSEY, #866 - Sarpy<br>County Sheriff; and NICOLE R.<br>HUTTER, Sarpy County Attorney;<br><br>             Defendants. | **8:18CV194**<br><br><br>**MEMORANDUM<br>AND ORDER** |

Plaintiff filed a Complaint on May 1, 2018. (Filing No. 1.) He has been given leave to proceed in forma pauperis. (Filing No. 6.) The court now conducts an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e).[2]

## I. SUMMARY OF COMPLAINT

Plaintiff, a non-prisoner who currently resides in Mississippi, brings this action against Defendants Sarpy County; Benjamin Gerard Perlman ("Perlman"), Senior Deputy Sarpy County Attorney; Nicole R. Hutter ("Hutter"), Deputy Sarpy

---

[1] The correct will use the correct spelling of "Perlman" throughout the Memorandum and Order.

[2] In addition to his Complaint, Plaintiff filed several supplemental documents (filing nos. 7 through 24). The court has reviewed and considered these documents in conducting this initial review. *See* NECivR 15.1(b) (court may consider pro se litigants' amended pleadings as supplemental to original pleading).

County Attorney; Lee Polikov ("Polikov"), Sarpy County Attorney; Sarpy County Deputy Investigator Rachel Spurgeon #865 ("Deputy Spurgeon"); and Sarpy County Deputy Darin Morrissey #866 ("Deputy Morrissey").[3] ([Filing No. 1](); [Filing No. 8]().) Plaintiff does not set forth whether Defendants are sued in their official or individual capacities.

In the Complaint, Plaintiff claims that he was falsely arrested and jailed, and was maliciously prosecuted, for violating a state court child custody order and for contributing to the delinquency of a minor. ([Filing No. 1 at CM/ECF pp. 3](), [5-9]().) Plaintiff also appears to challenge various orders entered in his state court divorce case and the actions of parties not named as defendants (for example, his ex-wife, her attorney, and judges involved in the divorce case). Plaintiff broadly alleges:

> The Sarpy County Attorney's Office and Sheriff's office, in a combined effort, maliciously prosecuted Plaintiff by charging Plaintiff with 2 felony criminal charges that were brought with untrue probable cause and for a fraudulent purpose and were ultimately dropped and dismissed after serving their original purpose, which they were intended to only extradite Plaintiff to Nebraska to be served with a false Show Cause Order signed by an angry Recused Judge William B Zastera in a Civil Divorce case #CI0-2164 Sarpy County in which . . . that Show Cause order was dismissed due to being void because disqualified Zastera signed it. . . . The Civil and Criminal cases were combined by Sarpy county Courts, Prosecutors, and Sheriff's Office in an effort to severely violate Plaintiff's civil constitutionally protected rights . . . . [A]ny reasonable person could conclude that a malicious prosecution and a substantial abuse of process was conducted against the Plaintiff by a conspiracy committed by [Plaintiff's ex-wife], Mr. Perlman, Deputy Spurgeon, Deputy Morrisey, Nicole Hutter and her friend [Plaintiff's ex-wife's divorce attorney], and Judge William Zastera.

---

[3] The court will consider Defendants to include the parties identified in the replacement page 1 of the Complaint filed by Plaintiff on June 2, 2018. ([Filing No. 8]().)

(*Id.* at CM/ECF p. 8.)[4]

Specifically, Plaintiff asserts that, on May 3, 2016, he was arrested during a traffic stop in Georgia "by at least 20 different officers from various state, federal, county, and local agencies for two false felony warrants that were manufactured by a false affidavit written by" Deputy Spurgeon of the Sarpy County Sheriff's Office. (*Id.* at CM/ECF pp. 7-8.) According to Plaintiff, Deputy Spurgeon's warrant affidavit included "numerous false statements" and omitted "exculpatory evidence" (text messages from Plaintiff's daughter), which Deputy Spurgeon "had in her possession." (*Id.* at CM/ECF pp. 5, 8.) Plaintiff alleges that Deputy Spurgeon's "lies" and omissions "misled Judge Hutton [state court judge] to sign warrants against Plaintiff." (*Id.* at CM/ECF p. 5.)

Plaintiff also asserts that Deputy Spurgeon "was coached" by Plaintiff's ex-wife and her divorce attorney and "recused" Judge Zastera. (*Id.* at CM/ECF p. 8.) Plaintiff states that Deputy Spurgeon should have told Plaintiff's ex-wife "to notify her attorney to try and seek a civil warrant for contempt in divorce court" instead of "scar[ing] [Plaintiff's] children with runaway charges and [seeking] criminal charges against Plaintiff." (*Id.* at CM/ECF p. 6.)

With respect to Deputy Morrissey, Plaintiff asserts that he should have notified Deputy Spurgeon about the exculpatory evidence that "he had obtained from Plaintiff's daughter's cell phone." (*Id.*) Plaintiff alleges that the text messages show that Plaintiff's daughter initiated contact with Plaintiff, which demonstrates that "no crime was committed and the case was civil in nature." (*Id.*)

Plaintiff alleges that the felony warrants "were only used as a tool to extradite Plaintiff back to Nebraska so that a recused Judge could serve Plaintiff with a false contempt charge (substantial abuse of process)" in a divorce matter. (*Id.* at CM/ECF

---

[4] Spelling, capitalization, and punctuation corrected throughout the Memorandum and Order.

p. 8; *see also* [Filing No. 24 at CM/ECF p. 3](#) ("The felonies were used for extradition only to get [him] back to NE to serve [him] on contempt. The contempt is being used to prevent [his] modification from ever being heard because [his] evidence is so strong against [his] ex-wife that any reasonable judge would change custody to [him].").)

Plaintiff claims that Perlman, a Senior Deputy Sarpy County Attorney, maliciously prosecuted Plaintiff on the two felony charges. ([Filing No. 1 at CM/ECF p. 5](#).) He alleges that Perlman refused to "drop the charges" even though Plaintiff's attorney "had repeatedly reminded him that the case was a civil matter" and "should be in civil court." (*[Id.](#)*) Plaintiff states that the felony charges were later dropped to four misdemeanors, but that Perlman persisted on "trying to get Plaintiff to plead guilty to one charge to dismiss the other three." (*[Id.](#)*) Plaintiff asserts that Perlman "forced" Plaintiff's two daughters to testify against him at trial and told them that, if they did not testify, "they would be forced to go to juvenile detention for Attempted runaway charges." (*[Id.](#)*) Plaintiff states that, although his daughter's text messages were introduced at trial and "tore apart" the prosecution's case, and although Perlman knew "the police report said that [Plaintiff] never entered the state of Nebraska's jurisdiction on any day of the incident or days around the incident," Perlman continued to "convince the judge and jury of [Plaintiff's] guilt." (*[Id.](#)*)

According to Plaintiff, "Judge Wester threw out all charges against [him]" and "conceded that the matter was civil and not criminal and that Plaintiff did not commit any crime whatsoever." (*[Id.](#) at CM/ECF pp. 5*, [8](#).) Plaintiff's state court records, available to this court online, confirm that a jury trial was held on October 20, 2016, and the court dismissed the misdemeanor charges against Plaintiff, but the records do not reflect the reason for dismissal. The court takes judicial notice of the state court records related to this case in *State v. McCullough*, Case No. CR16-1474, County Court of Sarpy County, Nebraska. *See [Stutzka v. McCarville, 420 F.3d 757, 760 n.2 (8th Cir. 2005)](#)* (court may take judicial notice of judicial opinions and public records).

4

Plaintiff further claims that Hutter, a Deputy Sarpy County Attorney, ordered Perlman "to keep prosecuting Plaintiff" after the felonies were dropped to misdemeanors in order to "scare Plaintiff into pleading guilty of at least a misdemeanor to take liability away from the malicious prosecution and abuse of process that had already occurred by Deputies, Prosecutors, and disqualified Judge Zastera." (Filing No. 1 at CM/ECF p. 6.) Plaintiff alleges that Hutter "chose to take 4 charges to trial where they were proven bogus[,] as well as the felonies[,] and thrown out of the court by angry Judge Wester." (Id.) Plaintiff asserts that Hutter "knew the case was civil" but that Hutter "was prosecuting it as a favor to Plaintiff's ex-wife's attorney . . . and as a favor to the 5-year disqualified Judge Zastera who was the initial Judge on the divorce case and longtime family friend of [Plaintiff's ex-wife's] high profile doctor family." (Id.) Plaintiff also alleges that Hutter falsified information on the National Crime Information Center ("NCIC") data system in an "attempt to convince any and all law enforcement around the country to see Plaintiff as the most dangerous criminal possible." (Id. at CM/ECF p. 8.) According to Plaintiff, the "derogatory information" on the NCIC included that Plaintiff was dangerous to law enforcement, a danger to others, a substance abuser, and mentally ill, and was "designed to justify law enforcement to use deadly force on sight of Plaintiff." (Id.)

Plaintiff claims that, as a result of Defendants' actions, he was in jail from May 3, 2016 until May 26, 2016; he has suffered complex post-traumatic stress, "extreme sadness every day that [his] children are being used to persecute and prosecute [him] when [he] is currently entitled to full custody of his children, not their mother," nightmares due to incarceration, and "chronic pain syndrome to right abdomen injury\surgery irritated by incarceration crawling to top bunk without a ladder"; he is unable to work, which has resulted in unpaid bills and ruined his credit; all his friends in Omaha "broke ties" with him; his ex-wife and her divorce attorney "continue to pursue contempt charges against him even though an active motion to modify the divorce decree is still pending and unanswered"; there are active warrants against him; and his driving privileges have been suspended. (Id. at CM/ECF p. 8.)

As relief, Plaintiff seeks $5,000,000.00 in damages; "habeas corpus" relief "from the malicious prosecution on the contempt warrants" issued by a "bias[ed] judge in the divorce court of Nebraska"[5]; a judgment declaring "all of Judge Zastera's orders and the entire divorce decree" void; and "a stay of enforcement on all actions by the State [of] Nebraska against Plaintiff to include releasing the hold on Plaintiff's driver's license privileges, not cancelling passport, not filing for any further warrants for Plaintiff's arrest, recalling current warrants and not pursuing any tax enforcement or any other forms of enforcement construed to further add more adverse inference to Plaintiff." (*Id.* at CM/ECF p. 9.)

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when

---

[5] The court dismissed, under the *Younger* abstention doctrine, Plaintiff's habeas corpus action challenging the state district judge's order holding him in contempt of court for failure to abide by that court's orders in his divorce case involving Plaintiff's noncompliance with a child support order and a property settlement order. *See McCullough v. State of Nebraska*, Case No. 8:17-cv-487 (Filing Nos. 3 & 4). At the time the court issued its judgment in the habeas proceeding, Plaintiff had not been taken into custody and the matter was pending in the Nebraska Supreme Court. The Nebraska Supreme Court has since affirmed the state district judge's orders. *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018).

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## III. DISCUSSION OF CLAIMS

### A. Claims for Relief Related to Plaintiff's State Court Divorce Case

As best the court can tell, Plaintiff, in large part, is seeking declaratory and injunctive relief from state court judgments and orders relating to his divorce decree, the property settlement order, and child support and custody obligations. These are matters related to family law disputes which the plaintiff is precluded from raising in the federal courts by the "domestic relations doctrine" articulated in *Ankenbrandt v. Richards*, 504 U.S. 689 (1992). In *Ankenbrandt*, the United States Supreme Court recognized a "domestic relations exception" to the jurisdiction of lower federal courts, stating "that the domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Id.* at 703.

> The [domestic relations] limitation is one on subject matter jurisdiction, and is therefore not waivable by the parties. The aim of the exception is to keep federal courts from meddling in a realm that is peculiarly delicate, that is governed by state law and institutions (e.g., family courts), and in which inter-court conflicts in policy or decrees should be kept to an absolute minimum.

*Dunn v. Cometa*, 238 F.3d 38, 41 (1st Cir. 2001). It is clear from the Complaint that granting Plaintiff the relief sought related to his divorce case would require the court to entangle itself into issues of domestic relations law (such as state child-support and child-custody law), areas in which it does not have jurisdiction. *See El v. Ricketts*, No. 8:18CV327, 2018 WL 4006770, at *1 (D. Neb. Aug. 22, 2018).

The *Rooker-Feldman* doctrine also precludes consideration of Plaintiff's claims for relief related to his divorce case. The *Rooker-Feldman* doctrine provides that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments and state proceedings. *Mosby v. Ligon*, 418 F.3d 927, 931 (8th Cir. 2005). *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923). Specifically, the doctrine "bars federal courts from hearing cases brought by the losing parties in state court proceedings alleging 'injury caused by the state-court judgment and seeking review and rejection of that judgment.'" *Mosby*, 418 F.3d at 931 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)). In fact, federal district courts do not have jurisdiction "over challenges to state-court decisions . . . even if those challenges allege that the state court's action was unconstitutional." *Feldman*, 460 U.S. at 486; *see also Ballinger v. Culotta*, 322 F.3d 546, 548-49 (8th Cir. 2003) (dismissing claims under *Rooker-Feldman* doctrine where the relief requested in the complaint would effectively reverse or undermine the state court decision or void its ruling and noting that "[f]ederal district courts thus may not 'exercis[e] jurisdiction over general constitutional claims that are 'inextricably intertwined' with specific claims already adjudicated in state court" (citation omitted)). Put simply, a federal district court does not possess authority in a civil rights case to review or alter a final judgment of a state court judicial proceeding. *See West v. Crnkovich*, No. 8:12CV273, 2013 WL 2295461, at *3 (D. Neb. May 24, 2013); *see also Keene Corp. v. Cass*, 908 F.2d 293, 297 (8th Cir. 1990) (the *Rooker-Feldman* Doctrine applies to Section 1983 actions as well as claims for injunctive and declaratory relief). The *Rooker-Feldman* doctrine also applies to state proceedings that are essentially judicial in nature. *Feldman*, 460 U.S. at 467; *see also Ballinger*, 322 F.3d at 548.

Here, Nebraska state courts have entered orders in Plaintiff's divorce case regarding Plaintiff's property settlement, child custody, and child support obligations. On April 26, 2018, the Nebraska Supreme Court affirmed the state district judge's order finding Plaintiff in contempt for failing to pay childcare expenses, child support, and property equalization payments. *See McCullough*, 299 Neb. 719, 910 N.W.2d 515. Any review of Plaintiff's claims for relief related to his divorce case would require the court to review the specific issues addressed in the state court proceedings. The court does not have jurisdiction to review the state court proceedings or grant the relief Plaintiff seeks.

Accordingly, Plaintiff's claims for relief related to his divorce case are dismissed without prejudice for lack of subject-matter jurisdiction because amendment of his Complaint would be futile. *See Horras v. Am. Capital Strategies, Ltd.*, 729 F.3d 798, 804 (8th Cir. 2013) (district court may deny leave to amend when amendment would be futile).

## B. Section 1983 Claims Related to Plaintiff's State Court Criminal Case, *State v. McCullough*, Case No. CR16-1474, County Court of Sarpy County, Nebraska

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Liberally construing Plaintiff's Complaint, he is claiming Defendants violated his Fourth Amendment rights[6] and,

---

[6] A § 1983 plaintiff's claim that he was arrested or prosecuted without probable cause, even if labeled a claim of malicious prosecution, must be judged under the Fourth Amendment, not substantive due process. *Stewart v. Wagner*, 836 F.3d 978, 983 (8th Cir. 2016). However, the Eighth Circuit has declined to decide "the issue of whether or when malicious prosecution violates the Fourth Amendment." *Harrington v. City of Council Bluffs*, 678 F.3d 676, 680-81 (8th Cir. 2012); *see also Griffin v. Nebraska*, No. 8:18CV316, 2018 WL 3675241, at *1 n.1 (D. Neb. Aug. 2, 2018).

along with other parties not named as defendants, conspired to violate his constitutional rights.

**1. Claims Against Perlman, Hutter, Deputy Spurgeon, and Deputy Morrissey in Their Official Capacities**

Plaintiff makes claims against the prosecutors involved in his state court criminal proceedings, Perlman and Hutter of the Sarpy County Attorney's Office, as well as the deputies involved in securing the arrest warrant, Deputy Spurgeon and Deputy Morrissey of the Sarpy County Sheriff's Office. Because Plaintiff does not specify in what capacity these Defendants are being sued, the court must assume they are sued in their official capacities. *See Alexander v. Hedback*, 718 F.3d 762, 766 n.4 (8th Cir. 2013) ("'This court has held that, in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity.'") (quoting *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999)). Liberally construed, Plaintiff's claims against these Defendants are claims against Sarpy County. *See Johnson*, 172 F.3d at 535 ("A suit against a public employee in his or her official capacity is merely a suit against the public employer.").

In order to state a plausible claim against Sarpy County, Plaintiff must allege that a "policy" or "custom" caused a violation of his constitutional rights. *Doe By and Through Doe v. Washington Cnty.*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). An "official policy" involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy. *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 645 (8th Cir. 1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). To establish the existence of a governmental "custom," a plaintiff must prove:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Jane Doe*, 901 F.2d at 646.

Here, Plaintiff does not allege that there is a continuing, widespread, persistent pattern of unconstitutional misconduct by Sarpy County attorneys or the Sarpy County Sheriff's Office, or that Sarpy County's policymaking officials were deliberately indifferent to or tacitly authorized any unconstitutional conduct. In addition, Plaintiff does not allege that an unconstitutional custom was the moving force behind the alleged constitutional violations or that Sarpy County failed to adequately train its employees. *See Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell,* 436 U.S. at 694). Even with the most liberal construction, Plaintiff has failed to allege sufficient facts to state a claim upon which relief may be granted against Sarpy County. Accordingly, Plaintiff's claims against Perlman, Hutter, Deputy Spurgeon, and Deputy Morrissey in their official capacities are dismissed. *See Parsons v. McCann*, 138 F. Supp. 3d 1086, 1098 (D. Neb. 2015) (claims against county attorneys in their official capacities were actually claims against county that employed them).

However, on the court's own motion, Plaintiff shall have 30 days in which to amend his Complaint to clearly state a claim upon which relief can be granted against Sarpy County. If an Amended Complaint is filed, it will supersede, rather than supplement, Plaintiff's original Complaint. That is to say, the amended complaint must "stand on its own."

The court will next address whether Plaintiff should be allowed an opportunity to amend his Complaint to state claims against Deputy Spurgeon, Deputy Morrissey, Perlman, and Hutter *in their individual capacities*.

## 2. Claims Against Deputy Spurgeon and Deputy Morrissey in Their Individual Capacities

Liberally construed, Plaintiff alleges that Deputy Spurgeon and Deputy Morrissey violated his Fourth Amendment rights by omitting material facts from the arrest warrant affidavit that would have revealed that there was no probable cause to arrest Plaintiff. Plaintiff claims that Deputy Spurgeon and Deputy Morrissey caused the affidavit's alleged failures, resulting in Plaintiff's unconstitutional arrest and malicious prosecution.

The Warrant Clause of the Fourth Amendment[7] requires that in order to obtain a warrant to make an arrest, a law enforcement officer must make a factual showing sufficient to constitute "probable cause." *See* U.S. Const., Amend. IV; *Franks v. Delaware*, 438 U.S. 154, 164 (1978). Probable cause to arrest exists if "the totality of circumstances at the time of arrest is sufficient to lead a reasonable person to believe that the suspect has committed or is committing an offense." *Williams v. Decker*, 767 F.3d 734, 742 (8th Cir. 2014). The required showing is "'[a] probability or substantial chance of criminal activity'"—not necessarily "'an actual showing of criminal activity.'" *United States v. Smith*, 715 F.3d 1110, 1115 (8th Cir. 2013) (*Smith II*) (internal quotation omitted).

---

[7] The Fourth Amendment is incorporated in the Due Process Clause of the Fourteenth Amendment and thereby has been made applicable to the States and local governments and their officials. *Colorado v. Bannister*, 449 U.S. 1, 2 (1980) (citations omitted).

"[A] facially sufficient affidavit [supporting a search warrant] may be challenged on the ground that it used deliberately or recklessly false statements to demonstrate probable cause." *United States v. Smith*, 581 F.3d 692, 695 (8th Cir. 2009) (*Smith I*) (quoting *Franks*, 438 U.S. at 168-71); *accord Hawkins v. Gage Cnty.*, 759 F.3d 951, 958 (8th Cir. 2104). This rule applies equally to an affidavit supporting an arrest warrant. *Moody v. St. Charles Cnty.*, 23 F.3d 1410, 1412 (8th Cir. 1994). Omission of material information from an affidavit can form the basis of a constitutional violation "if the additional information would have negated probable cause." *United States v. Finley*, 612 F.3d 998, 1003 n.8 (8th Cir. 2010) (emphasis omitted). "An official who causes such a deprivation is subject to § 1983 liability." *Bagby v. Brondhaver*, 98 F.3d 1096, 1098 (8th Cir. 1996).

A material omission from a supporting affidavit will result in a constitutional violation if "(1) the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading, and (2) the affidavit, if supplemented by the omitted information would not have been sufficient to support a finding of probable cause." *Hawkins*, 759 F.3d at 959 (internal quotation omitted).

In light of the liberal construction afforded to pro se litigants' pleadings, the court finds that Plaintiff has stated viable Fourth Amendment claims against Deputy Spurgeon and Deputy Morrissey *in their individual capacities*, as they were the deputies alleged to be involved in securing Plaintiff's arrest warrant. Accordingly, the court will grant Plaintiff leave to amend his Complaint to designate that Deputy Spurgeon and Deputy Morrissey are being sued *in their individual capacities* with respect to the allegations described above. However, the court cautions Plaintiff that this is only a preliminary determination based on the allegations found within the Complaint. This is not a determination of the merits of Plaintiff's claims or potential defenses thereto. Further, no summonses will be issued until after Plaintiff has had an opportunity to amend his Complaint in accordance with this Memorandum and Order.

### 3. Claims Against Perlman and Hutter in Their Individual Capacities

The court concludes that it would be futile to allow Plaintiff an opportunity to amend his Complaint to allege claims against Perlman and Hutter in their individual capacities as such claims would be barred by prosecutorial immunity.

"Prosecutors are entitled to absolute immunity from civil liability under § 1983 when they are engaged in prosecutorial functions that are 'intimately associated with the judicial process.'" *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006) (citations omitted). Thus, absolute immunity attaches when a prosecutor's actions are "prosecutorial" rather than "investigatory or administrative." *Id.*; *see also Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016) ("Prosecutors enjoy absolute immunity in their review of and decisions to charge a violation of the law."); *Anderson v. Larson*, 327 F.3d 762, 769 (8th Cir. 2003) ("The decisions relating to the initiation and dismissal of cases are at the very heart of a prosecutor's function as an advocate for the state, and absolute immunity thus attaches to those decisions." (quotations omitted)). "Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process." *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). Allegations that a prosecutor presented false testimony or withheld evidence do not defeat prosecutorial immunity. *See Myers v. Morris*, 810 F.2d 1437, 1446 (8th Cir. 1987), *overruled on other grounds by Burns v. Reed*, 500 U.S. 478 (1991); *Deuerlein v. Nebraska*, No. 8:15CV14, 2015 WL 1608687, at *2 (D. Neb. Apr. 10, 2015). *See also Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir. 1986) (holding that a prosecutor's alleged "use of perjured testimony and the non-disclosure of exculpatory information are certainly entitled to absolute immunity."). Where a prosecutor's actions are investigatory or administrative, that individual is entitled only to qualified immunity. *Brodnicki*, 75 F.3d at 1266. The focus in determining the nature of the prosecutor's actions is "whether the [prosecutor's] act was closely related to [her] role as advocate for the state." *Id.* at 1267.

Plaintiff alleges that Perlman and Hutter maliciously prosecuted him on two felony charges that "were brought with untrue probable cause and for a fraudulent purpose" and that "were ultimately dropped and dismissed." (Filing No. 1 at CM/ECF p. 8.) The crux of Plaintiff's allegations against Perlman and Hutter involve conduct intimately connected with the initiation and pursuit of the State of Nebraska's criminal prosecution of him. Plaintiff does not allege facts to suggest that Perlman's and Hutter's actions with respect to the charges were "investigatory or administrative" rather than "prosecutorial." Furthermore, allegations that Perlman and Hutter acted in furtherance of a conspiracy with the others by initiating and pursuing the criminal prosecution of Plaintiff do not defeat Perlman's and Hutter's immunity with respect to those acts. A prosecutor is absolutely immune from a conspiracy charge when, as here, his alleged participation in the conspiracy consists of otherwise immune acts. *Reasonover v. St. Louis Cnty., Mo.*, 447 F.3d 569, 580 (8th Cir. 2006). As such, Perlman and Hutter enjoy absolute prosecutorial immunity and Plaintiff's claims against them are dismissed with prejudice. *See Sample*, 836 F.3d at 916; *Anderson*, 327 F.3d at 769.

### 4. Claims Against Polikov

Plaintiff lists Polikov, the Sarpy County Attorney, in the replacement caption (filing no. 8), but does not allege any specific acts committed by this individual. A complaint that only lists a defendant's name in the caption without alleging that the defendant was personally involved in the alleged misconduct fails to state a claim against that defendant. *See Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (citing *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (holding that court properly dismissed a pro se complaint where the complaint did not allege that defendant committed a specific act and the complaint was silent as to defendant except for his name appearing in caption)). Here, Plaintiff's allegations do not give Polikov fair notice of the claims against him. Because Plaintiff failed to allege that Polikov was personally involved in violating his constitutional rights, Plaintiff's Complaint fails to state a claim upon which relief may be granted against him.

The court concludes that it would be futile to allow Plaintiff an opportunity to amend his Complaint to allege claims against Polikov in his individual capacity as such claims would be barred by prosecutorial immunity. In addition, any claims against Polikov in his official capacity would be dismissed because they would amount to claims against Sarpy County. *See Johnson*, 172 F.3d at 535.

## 5. Section 1983 Civil Conspiracy Claim

Liberally construed, Plaintiff alleges that Defendants, along with other parties not specifically named as defendants, conspired to deprive him of his constitutional rights.

"To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citing *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999)). "The plaintiff is [also] required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *Id.* In addition, to sustain a conspiracy claim under § 1983, a plaintiff must allege with particularity specific facts indicating a "meeting of the minds," meaning a mutual understanding among the alleged conspirators to take actions to an unconstitutional end. *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675 (8th Cir. 2012).

Here, Plaintiff only makes conclusory allegations that Defendants and others conspired to "violate Plaintiffs civil constitutionally protected rights" (Filing No. 1 at CM/ECF p. 8.) None of his specific factual allegations point to or suggest a "meeting of the minds" amongst Defendants and/or other parties, as opposed to discrete, individual alleged acts by them not done in concert. Therefore, even if Plaintiff successfully alleges a constitutional violation, Plaintiff's Complaint fails to state any § 1983 conspiracy claim.

The court will, however, grant Plaintiff an opportunity to amend his complaint to state a cognizable § 1983 conspiracy claim against the proper parties.

## 6. Parties Not Named as Defendants

Plaintiff includes significant extraneous information about parties not named as defendants. If Plaintiff decides to file an amended complaint, Plaintiff must include all of the claims he wishes to pursue against all of the defendants he wishes to proceed against in the amended complaint. He must designate whether defendants are being sued in their official or individual capacities, or both.

Plaintiff is cautioned, however, that the Sarpy County Sheriff's Office and the Sarpy County Attorney's Office are not separate legal entities from Sarpy County. *See Parsons*, 138 F. Supp. 3d 1086, 1097-98 (Nebraska law allows counties to sue and be sued, but the same is not true of county offices and departments). In addition, if Plaintiff attempts to name state court judges as defendants in his amended complaint, he should be mindful of the doctrines of sovereign immunity[8] and judicial

---

[8] The Eleventh Amendment bars claims for damages by private parties against a state. *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g.*, *Dover Elevator Co.*, 64 F.3d at 444; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). A state's sovereign immunity extends to public officials sued in their official capacities as "[a] suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson*, 172 F.3d at 535. A district court judge within the Nebraska Judicial Branch is a state official, and a plaintiff's official-capacity claims against a state district court judge are claims against the state. *See Tyler v. Kimes*, No. 8:18CV74, 2018 WL 3057873, at *2 (D. Neb. June 20, 2018) (citing *Tisdell v. Crow Wing Cnty.*, No. CIV. 13-2531 PJS/LIB, 2014 WL 1757929, at *7 (D. Minn. Apr. 30, 2014) (official-capacity claims against state court judge are claims against state)).

immunity.[9] Finally, Plaintiff's ex-wife and her attorney are private individuals, and Plaintiff has not alleged that they acted under color of state law. As indicated above, to succeed on a § 1983 claim, a plaintiff must demonstrate that the defendant acted under color of state law.[10] 42 U.S.C. § 1983; *West*, 487 U.S. 42, 49-50 (1988).

## 7. Injunctive Relief

The special relief Plaintiff requests ("a stay of enforcement on all actions by the State of Nebraska," restoration of driving privileges, not cancelling passport, not filing for any further warrants for Plaintiff's arrest, recalling current warrants, and "not pursuing any tax enforcement or any other forms of enforcement construed to further add more adverse inference to Plaintiff" (filing no. 1 at CM/ECF p. 9)) is not available in a federal civil rights action. The court must abstain from interfering with any ongoing state action, whether criminal or civil, absent exceptional circumstances, which are not alleged. *See Trainor v. Hernandez*, 431 U.S. 434, 444 (1977) (civil); *Younger*, 401 U.S. at 41 (criminal).

---

[9] A judge is immune from suit, including suits brought under 42 U.S.C. § 1983, to recover for alleged deprivation of civil rights, in all but two narrow sets of circumstances. *Woodworth v. Hulshof*, 891 F.3d 1083, 1090 (8th Cir. 2018); *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Woodworth*, 891 F.3d at 1090-91 (quoting *Schottel*, 687 F.3d at 373). An act is judicial if "it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity." *Id.* (internal citations omitted). Absolute judicial immunity is not overcome by allegations of bad faith or malice. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978).

[10] A § 1983 claim may be brought against a private individual if he conspires with a state actor to deprive a person of his constitutional rights. *DuBose v. Kelly*, 187 F.3d 999, 1003 (8th Cir. 1999).

To the extent Plaintiff is seeking relief from any criminal convictions that have not been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus, his claims are barred by the principles discussed in *Heck v. Humphey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a claim for damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87.

## C. State Law Claims

Liberally construing the Complaint, Plaintiff may have claims for violations of state law, such as false arrest, malicious prosecution, abuse of process, conspiracy, and emotional and mental distress. Pending amendment, as set forth in this Memorandum and Order, the court may choose to exercise supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367.

IT IS THEREFORE ORDERED that:

1.      The following Defendants and claims shall be dismissed or proceed further as specified below:

      a.      Plaintiff's claims for relief related to his divorce case are dismissed without prejudice and without leave to amend.

      b.      Plaintiff's claims for declaratory and injunctive relief are dismissed without prejudice and without leave to amend.

      c.      Defendants Perlman, Hutter, and Polikov are dismissed from this case with prejudice and without leave to amend.

d.  Plaintiff's claims against Deputy Spurgeon and Deputy Morrissey *in their official capacities* are dismissed.

e.  For purposes of initial review only, Plaintiff has stated viable Fourth Amendment claims against Deputy Spurgeon and Deputy Morrissey *in their individual capacities*. Plaintiff is granted leave to file an amended complaint to designate that Deputy Spurgeon and Deputy Morrissey are being sued *in their individual capacities*.

f.  Plaintiff is granted leave to file an amended complaint to state a cognizable claim against Sarpy County.

g.  Plaintiff is granted leave to file an amended complaint to state a cognizable 42 U.S.C. § 1983 conspiracy claim against the proper Defendants.

2.  Plaintiff shall have until **January 2, 2019**, to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the court will result in the court dismissing this case without further notice to Plaintiff. **If Plaintiff decides to file an amended complaint, Plaintiff must include all of the claims he wishes to pursue against all of the defendants he wishes to proceed against in the amended complaint. Plaintiff should be mindful to explain in his amended complaint what each defendant did to him, when the defendant did it, and how the defendant's actions harmed him.**

3.  In the event that Plaintiff files an amended complaint, Plaintiff shall restate the allegations of the current Complaint (filing no. 1) and any new allegations. Failure to consolidate all claims into one document may result in the abandonment

of claims. **Plaintiff is warned that an amended complaint will supersede, not supplement, his Complaint.**

4.      The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e) in the event he files an amended complaint.

5.      The clerk of the court is directed to set a pro se case management deadline using the following text: **January 2, 2019**: check for amended complaint.

6.      The clerk's office is directed to remove Defendants Benjamin Gerard Perlman and Nicole R. Hutter from this action.

7.      Plaintiff shall keep the court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal without further notice.

Dated this 3rd day of December, 2018.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge